# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JEANNE DIORIO, | ) | CASE NO. 4:15-cv-1710 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| TMI HOSPITALITY, L.P., | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of defendant TMI Hospitality, L.P. ("defendant" or "TMI") for summary judgment pursuant to Fed. R. Civ. P. 56. (Doc. No. 50 ["Mot."].) Plaintiff Jeanne DiOrio ("plaintiff" or "DiOrio") opposed the motion (Doc. No. 56[1] ["Opp'n"]), and defendant replied. (Doc. No. 57 ["Reply"]). For the reasons that follow, defendant's motion is granted.

## I. BACKGROUND

Plaintiff was employed by defendant from March 2007 until February 6, 2015 as the director of sales at the Youngstown/Boardman (Ohio) Residence Inn, Fairfield Inn, and Hampton Inn. (Doc. No. 1 (Complaint ["Compl."]) ¶ 7.) Plaintiff alleges that in 2014, defendant's sales performance plan and goals for her sales territory were unreasonable based on business conditions in the area, but plaintiff performed as well as younger colleagues. (*Id*. ¶¶ 9, 14.) On December 22, 2014,[2] plaintiff filed a charge of age discrimination against defendant with the Equal Employment

---

[1] Plaintiff's exhibits in support of her opposition to the motion are filed at Doc. No. 55.

[2] Plaintiff alleges that she filed the EEOC charge on December 22, 2015, but this appears to be a typographical error because the document shows that she signed the charge on December 22, 2014. (Doc. No. 50-4 at 944-46 (all references to page numbers are to the page identification numbers generated by the Court's electronic filing system).)

Opportunity Commission ("EEOC"). (*Id.* ¶ 15.) On January 12, 2015, plaintiff was placed on a second sales performance plan, and she was required to meet the criteria set forth therein or face termination. (*Id.* ¶ 16.)

Plaintiff claims that defendant terminated her on February 6, 2015 for the pretextual reason that she failed to meet her performance goals, but the real reason was age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 9 U.S.C. §§ 623 (a)(1), *et seq.* (counts I (*id.* ¶¶ 23-28) and II (*id.* ¶¶ 29-34), respectively).[3] Defendant moves for summary judgment on both counts, arguing that the undisputed facts show that plaintiff was terminated due to poor performance, and not because of her age or in retaliation for filing an EEOC charge.

## II. DISCUSSION

### A.  Summary Judgment Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution affects the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Id.*

The moving party must provide evidence to the court which demonstrates the absence of a genuine dispute as to any material fact. Once the moving party meets this initial burden, the

---

[3] Plaintiff voluntarily withdrew her state law claim for age discrimination (count III). (*See* Doc. Nos. 11, 12.)

opposing party must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson*, 477 U.S. at 250. It is the nonmoving party's duty to point out specific facts in the record that create a genuine issue of material fact; the trial court does not have a duty to search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)); *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992) (citation omitted).

The nonmoving party may oppose a summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex*, 477 U.S. at 324. The Court must view all facts and evidence, and inferences that may be reasonably drawn therefrom, in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962). General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"Summary judgment requires that a plaintiff present more than a scintilla of evidence to demonstrate each element of a prima facie case." *Garza v. Norfolk S. Ry. Co.*, 536 F. App'x. 517, 519 (6th Cir. 2013) (citing *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 268 (6th Cir. 2007)). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Street*, 886 F.2d at 1477 (*quoting Anderson*, 477 U.S. at 252).

The district court's review on summary judgment is a threshold inquiry to determine whether there is the need for a trial due to genuine factual issues that must be resolved by a finder

of fact because those issues may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003).

> [Summary judgment is required] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing of an essential element of [his] case with respect to which [he] has the burden of proof.

*Celotex,* 477 U.S. at 322-23 (internal quotation marks and citation omitted).

## B. ADEA Claim (Count I)

### 1. Direct evidence

An ADEA plaintiff will survive summary judgment if she presents direct evidence that the adverse employment action was taken because of her age. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1081 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). Direct evidence of discrimination is evidence that, if believed, proves a fact at issue without an inference or presumption. *Rowan v. Lockheed Martin Energy Sys. Inc.,* 360 F.3d 544, 548 (6th Cir. 2004) (citations omitted).

In opposition to defendant's motion, plaintiff cites two statements made by one of her supervisors, Ashley LaCourse ("LaCourse"),[4] that plaintiff claims constitute direct evidence of age

---

[4] LaCourse denies being a "supervisor," but the Court will assume for the purpose of this analysis that LaCourse was one of plaintiff's supervisors.

discrimination. (Opp'n at 1409.) The first occurred during a four hour meeting with LaCourse on December 15, 2014 regarding plaintiff's first sales action plan and "writeup." Plaintiff states that at the meeting, LaCourse told plaintiff that "we were bought out by Starwood, and those people are really, really young, like 25, 26. I know I'm young. I'm 32. But you, you, Jeanne, better be all about youthfulness and energy." (Doc. No. 50-2 (Deposition of Jeanne DiOrio ["DiOrio Dep."]) at 684-85 (289-91)[5]; Doc. No. 55-5 at 1346-47.)  With respect to the second statement, LaCourse told plaintiff over drinks after a grand opening in late 2012 or early 2013, and "numerous times," that plaintiff reminded her of her grandmother. (DiOrio Dep. at 685-86 (292-95).)

LaCourse does not recall telling DiOrio that she should be youthful and energetic,[6] but does recall telling plaintiff that plaintiff reminded LaCourse of her grandmother. (Doc. No. 55-1 (Deposition of Ashley LaCourse ["LaCourse Dep."]) at 1311-12.) LaCourse explained that DiOrio "has the most beautiful jewelry. My [grandmother] has the best jewelry. So I said it reminded me of my nanny because my nanny has fabulous jewelry. I always admired Jeanne's jewelry." (*Id*. at 1312.)

Neither statement constitutes direct evidence of age discrimination because neither necessarily supports an inference that age was the reason for plaintiff's termination. *Rowan,* 360 F.3d at 548. "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age […] constitute direct evidence of discrimination." *Suslovic v. Black & Decker, Inc*., No. 1:06CV116, 2007 WL 2153277 at *6 (N.D. Ohio July 23, 2007) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989)). Moreover, "[i]f

---

[5] Some deposition transcript are filed in a format wherein four transcript pages appear on a single page. For those filings, the parenthetical page numbers refer to the transcript page number.

[6] The Court will assume for the purpose of this analysis that LaCourse made the statement to plaintiff regarding youthfulness and energy.

discriminatory statements are offered as direct evidence of discrimination, those statements 'must come from [the] decisionmakers' responsible for the adverse employment decision. 'Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden[.]'" *Richardson v. Wal-Mart Stores, Inc.*, 836 F.3d 698, 703 (6th Cir. 2016) (quoting *Geiger v. Tower Automotive,* 579 F.3d 614, 620-21 (6th Cir. 2009)).[7]

Dave Mangus ("Mangus") was regional manager/director of operations and plaintiff's supervisor. (Doc. No. 55-2 (Deposition of Dave Mangus ["Mangus Dep."]) at 1320 (6-8).) Magnus testified that he made the decision to terminate plaintiff after consulting LaCourse,[8] Steve Martodam ("Martodam") (defendant's regional vice president at the time), and human resources. (Doc. No. 55-2 (Deposition of Dave Mangus ["Mangus Dep."]) at 1323 (19-20).) Plaintiff testified that she believed Martodam made the decision to terminate her with input from LaCourse. (DiOrio Dep. at 689-90 (307-10).) Plaintiff does not contend that Mangus or Martodam made age-related statements. Even if LaCourse could be characterized as a "decisionmaker" because she was consulted by Mangus and/or Martodam regarding plaintiff's termination, neither of LaCourse's statements relate to the decisional process to terminate plaintiff and, thus, are insufficient to establish direct evidence of age discrimination. *Richardson*, 836 F.3d at 703.

---

[7] While not constituting direct evidence of discrimination, discriminatory remarks by non-decision makers may, under circumstances not present here, be probative of pretext. *See Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 392-93 (6th Cir. 2009).

[8] LaCourse testified that she did not play a role in the decision to terminate plaintiff, but agreed with the decision "[b]ecause [DiOrio] was not producing." (LaCourse Dep. at 1311.)

## 2. Circumstantial evidence

Direct evidence is not required to prove age discrimination. Plaintiff "may establish a violation of the ADEA by either direct or circumstantial evidence." *Geiger,* 579 F.3d at 620 (citation omitted). Plaintiff will survive summary judgment if she can show a genuine issue of material fact regarding circumstantial evidence of age discrimination under the familiar three-step burden shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). *See Chappell v. GTE Prods. Corp.,* 803 F.2d 261, 265 (6th Cir. 1986) ("The evidentiary guidelines governing proof in discrimination cases were first set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) (construing Title VII), and the same analysis is generally applied in ADEA cases.") (citing *Coburn v. Pan Am. World Airways, Inc.*, 711 F.2d 339, 342 (D.C. Cir. 1983)); *Geiger*, 579 F.3d at 622 (applying *McDonnell Douglas* to circumstantial evidence claims in ADEA cases).

Under the *McDonnell Douglas* analysis, the "burden of production rests first on the plaintiff to establish [a] prima facie case, then on the defendant to articulate some legitimate non-discriminatory reason for the employee's [termination], and finally again on the plaintiff to show that the defendant's reasons were pretextual." *Chappell*, 803 F.2d at 265 (quotation marks, citations and italics omitted). Although the burden of production shifts between plaintiff and defendant, the burden of persuasion remains at all times with the plaintiff. *Id*. (citing *Burdine,* 450 U.S. at 254-55).

In order to satisfy that burden, plaintiff must show that her age was the "but for" cause of the defendant's adverse employment action. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (citing *Gross,* 557 U.S. at 177). "[I]t is not sufficient for the plaintiff to show that

age was a motivating factor in the adverse action; rather, the ADEA's 'because of' language requires that a plaintiff 'prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but for' cause of the challenged employer decision.'" *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Gross,* 557 U.S. at 177-78) (further citation omitted).

### *Prima facie case*

To set forth a prima facie case of age discrimination, plaintiff must establish four well-known elements: 1) that she was a member of a protected class; 2) that she was discharged; 3) that she was qualified for the position held; and 4) that she was replaced by someone outside of the protected class. *Geiger*, 579 F.3d at 622 (citations omitted). Defendant does not contest elements 1, 2 and 4. Plaintiff was 61 years old when she was terminated by defendant on February 6, 2015, and was replaced by Sheree Moore ("Moore"), who was 38 years old at the time. (Doc. No. 55-4 (Deposition of Sheree Moore ["Moore Dep."]) at 1342 (4).) Defendant does contend, however, that plaintiff was not qualified for the position of director of sales because she was performing poorly, and qualifications are measured at the time of termination. (Mot. at 609-10.)

Plaintiff argues in opposition that plaintiff has a bachelor's degree and prior sales experience, and was hired by a competitor after she was terminated by defendant. (Opp'n at 1410; DiOrio Dep. at 679-80 (269-70).) Plaintiff's qualifications appear to exceed the requirements listed in the job description for director of sales: "One-year certificate from college or technical school; or three to six months related experience and/or training; or equivalent combination of education or experience." (Doc. No. 50-3 at 755-56.) Viewing the evidence in a light most favorable to the plaintiff, the Court will assume for the purpose of this analysis that plaintiff was qualified for the position of director of sales, and has satisfied her burden to establish a prima facie case of age

discrimination. Thus, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for plaintiff's termination.

### Legitimate non-discriminatory reason for termination

Defendant states that plaintiff was terminated as director of sales in 2015 for poor performance. (Mangus Dep. at 1323 (20) ("Poor performance within the market, not meeting her regular goals or her financial goals that are set forth.").) Because defendant has articulated a legitimate, non-discriminatory reason for plaintiff's termination, the burden shifts back to plaintiff to demonstrate pretext. *See Chappell*, 803 F.2d at 265.

### Pretext

In order to avoid summary judgment on this prong of the *McDonnell Douglas* analysis, plaintiff must show that there is a genuine dispute of material fact from which a jury could reasonably find that defendant's stated reasons for her termination are false, and that the real "but for" reason is unlawful age discrimination. In the Sixth Circuit, "a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (footnote and citation omitted). These three categories are not rigid or limiting factors for determining pretext, but rather guidelines for focusing on the ultimate inquiry: did defendant terminate plaintiff for the stated reasons, or did defendant make up those reasons to conceal unlawful age discrimination. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (citing *Chen,* 580 F.3d at 400, n.4); *Spellman v. Ohio Dep't of Transp*., 244 F. Supp. 3d 686, 704 (S.D. Ohio 2017) (same) (quoting *Tingle,* 692 F.3d at 530).

Plaintiff contends that, on the record viewed in her favor, a reasonable jury could find that defendant's stated reasons for terminating plaintiff are false based on all three categories recognized by the Sixth Circuit to establish pretext, and the real reason is age discrimination. (Opp'n at 1408.) Defendant maintains that plaintiff cannot establish pretext in any of the three categories on the undisputed record in this case. The Court agrees.

*Plaintiff's 2014 performance*

Plaintiff, who was 53 years old at the time, was hired by defendant as director of sales in March 2007 as an at-will employee for three hotels in Youngstown, Ohio: the Residence Inn, Fairfield Inn, and Hampton Inn. (DiOrio Dep. at 618 (10), 688 (304).) It is undisputed that plaintiff's job as sales director was to foster and promote patronage at each of her three hotels. In order to perform the job successfully, her job duties included the essential functions of developing marketing plans, scheduling sales appointments, making cold calls, tracking sales data, working with other management personnel, and providing sales training to staff. (*Id.* at 618-19 (13-15); Doc. No. 50-3 at 755-56).)

Defendant does not dispute that plaintiff met her performance goals between 2007 and 2013. The parties also do not dispute that a decline in business was anticipated in 2014 due to the oil and gas industry leaving the area, but the goal was to stay above the competition: "[I]f the [competition] is outperforming us, that means they have business that we don't have. So it's our job to go out and acquire or, you know, obtain that business." (Mangus Dep. at 1321 (11).)

Plaintiff's financial performance goals for her three hotels were based on revenue, market performance[9] and, for the Residence Inn, also based on extended stay occupancy. (DiOrio Dep. at

---

[9] Market performance is measured by the STAR report, which measures market sales performance against competitors. (DiOrio Dep. at 620 (21).)

622 (26-27).) Performance goals are established through a process that includes the regional director (Mangus), regional vice president, and on up the defendant's management chain. (Mangus Dep. at 1321 (9-12).) Plaintiff "[has] no idea" how performance goals are determined, except that the goals for 2014 were set in December 2013, and the goals for 2015 were set in December 2014. (DiOrio Dep. at 624-25 (37-38).)

Plaintiff believed that some of the 2014 goals for her three hotels were unrealistic, but she did not communicate her opinion to Mangus or anyone else. (*Id.* at 625 (40).) Plaintiff admits that she did not achieve her performance goals for all three of her hotels in 2014, even though budgeted revenue goals in 2014 were lower than in 2013, and the overall decline in performance for her hotels was greater than those of competitive hotels. (*Id.* at 626 (44), 630-33 (58-73); Doc. No. 51 at 1150-52 (85-101).)

Plaintiff recognized early in 2014—around February—that her three hotels were not doing well. (DiOrio Dep. at 640 (111).) So did defendant, whose management raised the issue with plaintiff in the first quarter and continued to raise performance concerns throughout the year. For example, in March 2014, LaCourse provided plaintiff with specific sales activities to increase business, some of which plaintiff pursued and some of which she admittedly did not. (*Id*. at 644-45 (127-30); Doc. No. 50-3 at 875-77.) In May of 2014, LaCourse asked plaintiff to focus on the Hampton Inn and Fairfield Inn to meet revenue goals, but plaintiff did not meet those goals. (DiOrio Dep. at 650-51 (153-54); 50-4 at 883-84.) At least by August 2014, plaintiff was aware that management was concerned about declining sales performance and expected her to increase revenues at her hotels. (DiOrio Dep. at 638-39 (105, 107), 641 (114-15); Doc. No. 50-4 at 885.)

In October, 2014, LaCourse pointed out to plaintiff that business was going to competitors that plaintiff should be capturing for her hotels, and set certain specific goals. But plaintiff did not

know how to determine which competitor was getting what business. (DiOrio Dep. at 651-52 (156-60); Doc. No. 50-4 at 888-89.) Mangus also expressed his concerns to DiOrio in October regarding declining revenues of 10% (Fairfield Inn) and 18% (Residence Inn), and asked what her plans were "to turn this around." (DiOrio Dep. at 655-56 (173-74); Doc. No. 50-4 at 916.) But plaintiff went on vacation for two weeks at the end of October through the first week of November, and the performance of her properties continued to decline into December. (DiOrio Dep. at 655 (171-74).)

On December 7, 2014, Mangus' supervisor, Martodam, instructed him that after six months of "deep declin[e]" in extended stay performance (which plaintiff does not dispute), Mangus must "[c]hange the trend or the [director of sales] by year end." (DiOrio Dep. at 662-63 (200-02); Doc. No. 50-4 at 933.) Defendant implemented a sales action plan for plaintiff on December 15, 2014.[10] (Doc. No. 50-4 at 936-38.) Plaintiff also received a written warning regarding the need to improve her performance, which included both sales and sales activity planning. (DiOrio Dep. at 659 (188-90), 668 (223-25), 670 (230); Doc. No. 50-4 at 939-41). It is undisputed, however, that revenues for plaintiff's hotels continued to decline through December 2014. (DiOrio Dep. at 656 (174).)

On January 12, 2015, Mangus issued plaintiff a second action plan, cautioning her that failure to show improvement in her performance would result in termination on February 6, 2015.[11] (*Id*. at 674-75 (249-50); Doc. No. 50-4 at 951-53.) But plaintiff had planned a vacation to Las Vegas for the end of January 2015, and proceeded with her plans. (DiOrio Dep. at 672-73 (241-

---

[10] Plaintiff testified both that the objectives in the action plan to increase occupancy and revenue in her three hotels by January 6, 2015 were reasonable and obtainable (DiOrio Dep. at 666 (214-16)), and that the objectives were not reasonable (*Id*. at 670 (231).)

[11] Mangus noted in his warning that plaintiff's lack of sales performance resulted in declining revenues and profits for the company, as well as a reduction in compensation for managers and in working hours for desk staff, housekeepers, and laundry attendants. (Doc. No. 50-4 at 952.)

43).) Plaintiff admits she did not meet her performance goals for January, and she was terminated. (*Id*. at 676-77 (257-58).)

Plaintiff does not claim that her supervisors prevented her in any way from achieving her goals. (*Id*. at 626 (44).) Indeed, plaintiff admits that Mangus and others attempted to help her improve her performance. (*Id*. at 658 (184-85).) One example is the general manager at the Residence Inn, Steve Patris, who emailed plaintiff with business leads. Plaintiff responded by telling Patris to "limit these emails and discuss at our weekly meetings" because "these emails from at least 5 different people take up a great deal of my time[.]" (Doc. No. 50-4 at 955-56.)

### 3. Plaintiff's opposition to the motion

In opposition to defendant's evidence regarding her admitted poor performance, plaintiff maintains that defendant's reasons for terminating her are false, and had no basis in fact, did not actually motivate defendant's actions, or were insufficient to motivate defendant. In support plaintiff focuses on her market share performance and positive comments from defendant regarding her performance in 2014, and claims that similarly situated younger individuals were treated more favorably.

#### *Market share performance and positive comments insufficient to show pretext*

Plaintiff contends, and defendant does not dispute, that plaintiff achieved some of her market share goals and received a bonus for that performance. (Opp'n at 1413-17, citing record.) But plaintiff's opinion that defendant should have been satisfied with her market share performance is insufficient to establish pretext in light of her other admitted performance deficiencies. *See Messner v. Lockheed Martin Energy Sys., Inc.*, 126 F. Supp. 2d 502, 514 (E.D. Tenn. 2000) ("An employee's evaluation of his own performance or qualifications is irrelevant as a matter of law.") (citing *Wrenn v. Gould,* 808 F.2d 493, 502 (6th Cir. 1987) (employee's

"perception of his competence, and the incompetence of those competing against him, is irrelevant")); *Frazier v. Phillip's Masonry Grp., Inc.*, No. 1:09-0022, 2010 WL 1882123, at *9 (M.D. Tenn. May 11, 2010) ("Plaintiff's subjective beliefs and his perception of his own performance are not relevant.") (citation omitted). Indeed, it remains undisputed that plaintiff did not meet her overall revenue goals[12] and that her level of sales activity was not adequate.[13]

Further in support of pretext, plaintiff points to evidence of praise by defendant regarding her performance in 2014. (Opp'n at 1414-15.) This evidence includes: (1) a March 25, 2014 email from LaCourse praising plaintiff and others for their sales work "over the past month";[14] (2) the deposition testimony of LaCourse that as of August 2014, plaintiff was meeting her quarterly budgeted goals for the Residence Inn;[15] (3) an October 1, 2014 e-mail to plaintiff and others regarding a "[g]reat looking week" regarding occupancy and shifting for the Fairfield Inn;[16] (4) a November 1, 2014 email from LaCourse to plaintiff congratulating plaintiff because although the "[Residence Inn] fell short with revenue[,]" plaintiff "focused [her] efforts on the revenue at the [Hampton Inn] and [Fairfield Inn] and for that I am proud. Great job!";[17] (5) the deposition

---

[12] *See* DiOrio Dep. at 631-32 (63-69).

[13] Plaintiff agrees with defendant that her sales activity of one email and three planned calls per day was insufficient and inadequate, especially when business was down, and that plaintiff should have a higher level of planned sales activity. Plaintiff also agrees with defendant's expectation that an appropriate level of sales activity for her three hotels was ten new appointments, ten maintenance appointments, and six tours weekly, but plaintiff did not always comply with those requirements. (DiOrio Dep. at 659 (188-89), 660 (190, 193).)

[14] Doc. No. 50-12 at 1363.

[15] LaCourse testified that plaintiff was meeting her quarterly budgeted goals for the Residence Inn, but not the Fairfield inn or Hampton Inn. (LaCourse Dep. at 1261-62.)

[16] Doc. No. 50-3 at 861.

[17] Doc. No. 55-13 at 1365.

testimony of LaCourse that plaintiff "worked hard for quarter 3" and "hit her goals.";[18] and (6) a November 19, 2014 email from LaCourse to plaintiff that the "[Residence Inn] did an amazing job last week[.]"[19]

But plaintiff's selective citations of praise are taken out of context and, even viewed favorably to plaintiff, do not establish that plaintiff's *overall* performance deficiencies in 2014 had no basis in fact or did not actually motivate defendant. For example, in LaCourse's email cited by plaintiff regarding her "amazing job last week" at the Residence Inn, the rest of the story immediately follows: "Jeanne now you just need to hold a solid week at the [Residence Inn] and increase the business at the [Fairfield Inn]. When one succeeds the other hurts a little…have an even balance with your properties so we can have a solid market all around." (Doc. No. 55-14 at 1368.) Plaintiff herself recognized that although her performance sometimes showed improvement for one property, she did not show overall improvement. (*See* Doc. No. 50-3 at 860 ("When I do good at 2 hotels, then the other isn't doing good.").)

Plaintiff's sales activity performance was also sporadic. She admits that she could have done more and did not always comply with defendant's requirements regarding sales activities. LaCourse testified that when plaintiff was "talked to" about specific declining numbers she would pull through with business in that area. (La Course Dep. at 1300.) But defendant expected plaintiff to be "self-starting," not reactive. "[W]e needed consistency; not the constant badgering to say we need more[.]" (*Id*. at 1303.) As LaCourse described it, "[i]t's a constant battle that you have to do as a director of sales at a hotel. It never stops. You can never sit still. You have to continue building.

---

[18] LaCourse Dep. at 1275.

[19] Doc. No. 55-14 at 1368.

… [W]e're always looking for the next quarter. So she might have exceeded in quarter 3. What are we doing for quarter 4. Quarter 3's already done. You give your congratulations. What are we going to [do] to make sure that we're going to achieve our goals for quarter 4." (*Id*. at 1275-76.)

Plaintiff was terminated for not meeting her overall performance goals for all three hotels in 2014 and January 2015, which she admits. The evidence advanced by plaintiff that she periodically met some of her goals for some of her properties, and was praised for doing so by her employer, is insufficient to create a genuine dispute of material fact that defendant's stated reason for termination was false, and that a reasonable jury might conclude that defendant's real "but for" reason for terminating plaintiff was age discrimination.

### *No evidence that younger individuals were treated more favorably*

Plaintiff can also establish pretext by showing that defendant's stated reasons were insufficient to motivate termination. *Manzer,* 29 F.3d at 1084. This showing "'consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.'" *McKinley v. Skyline Chili, Inc.*, 534 F. App'x 461, 465 (6th Cir. 2013) (quoting *Manzer,* 29 F.3d at 1084).

Plaintiff contends that Patris (42 years old), the general manager of the Residence Inn and also supervised by Mangus, failed to achieve his financial goals for the Residence Inn, but was not placed on a performance improvement plan or otherwise disciplined. (*See* Opp'n at 1417-18.) In support of this pretext argument, plaintiff advances a February 1, 2015 email from Mangus to Patris and other general managers of hotels in Canton and Youngstown, which states as follows:

> We will never see another month like this. A month in which the six of you showed declines of more than 15% and didn't even come close to hitting 90% of your revenue goals. *I think it is past time to get back to basics where [general managers]*

*are held every bit as accountable for top line revenue as are the [directors of sales]*. I come from the days when we did not have Sales people at our properties and [general managers] were accountable for all sales efforts, and in looking at these numbers I have to question what the [directors of sales] are doing and if we could accomplish high numbers with just the [general manager] going out a couple of days a week, thus savings Sales payroll and driving that amount to the bottom line. So *effective this month* I am holding you, the [general managers] every bit as accountable as your [directors of sales] in achieving positive growth and hitting targeted numbers. I advise you all [to] clear time to get out of your properties one to two days per week, and make sales calls.  Attending Chamber and CVB events are no longer optional, and are mandated. . . . Sales is your responsibility, and you will be held accountable. If you have questions or need training, please let me know. . . . I will be setting up a simple report that each of you will need to complete showing your weekly sales efforts and I hope to have that to you tomorrow. As you need to be out there making calls this week.

(Doc. No. 55-23 at 1389-90 (emphasis added).)

Plaintiff's pretext argument pointing to Patris is unavailing. Plaintiff is not required to demonstrate an exact correlation between herself and Patris to establish pretext, but she must show that the two are similar in "all relevant respects" and "engaged in acts of comparable seriousness." *McKinley*, 534 F. App'x at 466 (quoting *Bobo v. United Parcel Serv., Inc.,* 665 F.3d 741, 751 (6th Cir. 2012) (citation omitted)).

Plaintiff's evidence shows neither. Plaintiff was terminated for failure to achieve her overall sales performance goals as director of sales for 2014 and January 2015, after repeated warnings and two performance improvement plans. Mangus' January 2015 email addresses Patris' poor performance for a single month—January 2015. Moreover, Mangus' email shows that Patris did not have the same sales responsibilities as the director of sales, and that Mangus was imposing *new* sales responsibilities upon Patris and other general managers, effective immediately. Thus, Patris' January 2015 performance issues are not similar to plaintiff's performance issues or of

comparable seriousness, and do not create a genuine dispute of fact as to whether plaintiff's extended poor performance was insufficient to motivate termination by defendant.[20]

In order to survive summary judgment, plaintiff must advance evidence from which a reasonable jury could conclude that defendant's stated reasons for terminating her are false, and that age discrimination is the real "but for" reason. *Scheick*, 766 F.3d at 529 (citations omitted); *see Bender v, Hecht's Dept. Stores*, 455 F.3d 612, 626 (6th Cir. 2006) (citations omitted). Plaintiff has failed to do so. Plaintiff admits that she did not meet her overall 2014 and January 2015 performance goals. Moreover, plaintiff acknowledges that if she were in her supervisor's shoes, she herself would have been concerned about the decline in her performance. (DiOrio Dep. at 638 (105).) There is no dispute that defendant provided plaintiff with an opportunity to address her performance issues and attempted to assist and encourage her to improve her performance. That plaintiff may have periodically met some of her performance goals for some of her properties, and believes that she did her job to the best of her ability, is not evidence from which a reasonable jury

---

[20] Plaintiff also points as evidence of pretext to a January 12, 2015 email from LaCourse to numerous general managers and others regarding hotel properties in several geographic locations, including Akron, Canton, and Youngstown. (Doc. No. 55-24 at 1392.) LaCourse's email establishes sales activity requirements for all of the recipients, noting that "as a region, we are struggling with getting those NEW/MAINTENANCE appointments and tours[,]" and closes with the admonition that "[t]his is a new year and we need to come out of the gates at full speed." *Id*. Plaintiff argues that LaCourse, who was 32 years old at the time, "testified that she did not know if any of the directors of sales that she supervised were in their 50s and that there were none in their 60s. . . . It is therefore clear that Plaintiff was the oldest of Ms. LaCourse's report's and was almost 30 years older than her supervisor." (Opp'n at 1418.) Plaintiff also cites her affidavit, in which she avers that she "believe[s]" she is the oldest director of sales supervised by Mangus and LaCourse. (*See* Doc. No. 55-27 ¶ 3.) From this plaintiff concludes that LaCourse favored younger employees.

It is plaintiff's burden on summary judgment to show with specific facts in the record that there is genuine dispute of material fact on the issue of pretext. Plaintiff's speculation regarding the age of LaCourse's direct reports is insufficient to satisfy her burden and survive summary judgment on this issue. *See Lewis v. City of Detroit*, No. 14-13091, 2016 WL 67600, at *9 (E.D. Mich. Jan. 6, 2016), *aff'd*, No. 16-1132, 2017 WL 2992231 (6th Cir. July 14, 2017) ("In attacking an employer's explanation for the discharge, [Plaintiffs] may not rely upon mere personal beliefs, conjecture and speculation." (internal quotation marks omitted) (quoting *Chappell*, 803 F.2d at 268); *Lujan*, 497 U.S. at 888-89. For the same reason, plaintiff's bald assertioin that LaCourse favored younger employees consists of nothing more than conjecture and speculation, and is insufficient to support pretext. (*See* DiOrio Dep. at 688-89 (305-07).)

could conclude that defendant's stated reason for terminating plaintiff is false, and age discrimination is the real "but for" reason.

Accordingly, defendant is entitled to summary judgment on plaintiff's ADEA claim.

## C. Retaliation (Count II)

Under the ADEA, employers are prohibited from retaliating against an employee for opposing or reporting age discrimination. *Blizzard*, 698 F.3d at 288 (citing 29 U.S.C. § 623(d)). To establish a prima facie case of retaliation, plaintiff must show that: "(1) she engaged in a protected activity, (2) the defending party was aware that the [plaintiff] had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and [the] adverse action." *Id.* (alterations in original) (citations omitted).

Once plaintiff establishes a prima facie case of retaliation, the burden shifts to defendant to articulate a non-retaliatory reason for the adverse employment action, and then shifts back to plaintiff to demonstrate that the proffered reason is a pretext for retaliation. *Id.* (citing *Ladd v. Grand Trunk W. R.R., Inc.,* 552 F.3d 495, 502 (6th Cir. 2009)). Plaintiff has the ultimate burden of persuasion to show that her protected conduct was the "but for" cause of her termination. *Montell v. Diversified Clinical Servs., Inc.,* 757 F.3d 497, 504 (6th Cir. 2014) (citation omitted).

Plaintiff admits that she never informed Mangus, LaCourse, or human resources (until towards the end of December 2014) that she believed she was being treated differently because of her age. (DiOrio Dep. at 684 (286-88).) Plaintiff's only evidence of protected activity is the filing of her EEOC charge of age discrimination on December 22, 2014. (Opp'n at 1419.) Plaintiff contends that, shortly thereafter on January 9, 2015, she was placed on a second performance improvement plan and then terminated on February 6, 2015, all in retaliation for filing an EEOC

charge. But plaintiff filed the EEOC charge *after* defendant implemented her first performance plan on December 15, 2014, and *after* Martodam's instruction to Mangus on December 7, 2014 that Mangus must "[c]hange the trend or the [director of sales] by year end." (DiOrio Dep. at 662-63 (200-02); Doc. No. 50-4 at 933.)

It is well-established that an employee cannot insulate themselves from previously contemplated adverse employment actions by engaging in protected activity, and then later claim that there is a causal connection between the two in order to establish a prima facie case. *Moore v. Ohio Edison Co., Inc.*, No. 4:15-CV-1424, 2016 WL 7097631, at *13 (N.D. Ohio Dec. 6, 2016) (citing *Montell., Inc.*, 757 F.3d at 507 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, — U.S. —, 133 S. Ct. 2517, 2532, 186 L. Ed. 2d 503 (2013))); *Montell,* 757 F.3d at 507 ("When the employer 'proceed[s] along lines previously contemplated,' we must not take the temporal proximity of the adverse employment action as evidence of causality.") (quoting *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 272, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (per curiam)).

Here, defendant had already set in motion a disciplinary process that ultimately led to plaintiff's termination before plaintiff filed her EEOC charge, Moreover, after plaintiff filed her EEOC charge, defendant gave plaintiff another opportunity to improve her performance in January 2015, which plaintiff admittedly did not do. Under these undisputed facts, the temporal proximity of the filing of plaintiff's EEOC charge and the culmination of a disciplinary process which ended in termination in February 2015, is insufficient to support a prima facie case of retaliation. *Moore,* 2016 WL 7097631, at *13 (citing *Van Winkle v. HM Ins. Grp., Inc.*, 72 F. Supp. 3d 723, 736-37 (E.D. Ky. 2014)).

Accordingly, defendant is entitled to summary judgment plaintiff's retaliation claim.

### III. CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment is granted.

**IT IS SO ORDERED**.


Dated: October 25, 2017

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**